MARK J. ROMEO   SBN 112002
LAW OFFICES OF MARK J. ROMEO
130 Sutter Street, 7th Floor
San Francisco, CA 94104
Telephone: (415) 395-9315
Facsimile:    (415) 395-9318
romeolaw@msn.com

Attorneys for Debtor
DEMAS WAI YAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re   DEMAS WAI YAN,<br><br>Debtor. | Bk. No. 04-3 3526 tec<br><br>Chapter 11<br>**DEBTOR'S OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES TO MOTION TO CONFIRM COMPROMISE**<br><br>Date: July 24, 2006<br>Time: 11:00 a.m.<br>Court: Hon. Thomas Carlson<br>       235 Pine St. 23d Floor<br>       San Francisco, CA 94104 |

### 1. **Introduction**

The Chapter 11 Trustee has filed a motion to confirm a compromise of the claim of Stella Chen in this case. The compromise would settle the claim of Chen, originally in the amount of $450,000, for the sum of $818,197. The debtor objects to the compromise as not in the best interests of the estate at this time. The debtor has submitted his declaration herewith stating his views on the compromise in light of the merits of the underlying claim and unresolved questions of the validity of the judgment and findings in the adversary proceeding, Chen v. Yan, No. 05-03236. In the debtor's view, the compromise should not be ruled upon without the court and Trustee considering the possibility that the judgment, now on appeal, could be successfully challenged by a motion under FRCP Rule 60(b).

## 2. The Judgment Challenged

After entry of the original judgment of December 23, 2005, the debtor, claimant Stella Chen and claimant Wei Suen all filed motions to amend or vacate the judgment in various ways. After hearing on those motions on February 10, 2006, the court entered a new judgment on March 3, 2006, which changed some findings but essentially left undisturbed the result of the December 23, 2005, with the exception of adding the results of Chen motion for fees and costs. The total amount of the judgment at that time was $767,654 in favor of Chen and against debtor. The judgment awarded nothing to claimant Wei Suen.

## 3. The Court and Trustee Should Consider the Possibility of a New Trial

In assessing the compromise, it appears that weighing the risks and uncertainties of litigation should account for the possibility that a new trial motion could be advanced by the trustee as to this claim. Although debtor previously moved under FRCP Rule 59 to amend the judgment, additional circumstances appear to justify the filing of a new trial motion under FRCP Rule 60(b).

FRCP Rule 60(b) states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Such a motion can be made with respect to a judgment that is on appeal; the appeal does not necessarily deprive the district court of jurisdiction to hear the motion. (Crateo, Inc. V. Intermark, Inc. 536 F2 862, 869-870 (9th Cir. 1976) cert. den. 429 US 896 (1976); Smith v. Lujan 588 F2 1304, 1307 (9th Cir, 1979); Coastal Delivery Corporation v. United States Customs Service 272 F. Supp. 2d 958, 966-967 (C.D. Cal. 2003). While the court does not have jurisdiction to vacate

a judgment, it appears that the court may entertain it and indicate an intent to either grant or deny it. In the former case, then, the appellant or moving party must then request remand from the appeals court.

Assuming then that the court could entertain the filing of the motion, the motion could be made on the grounds of FRCP Rule 60(b)(2) on the grounds of newly discovered evidence. To prevail on such a motion, the movant must show that the evidence existed at the time of trial, that it could not with reasonable diligence be secured for the trial and that it could affect the outcome of the trial. (FRCP Rule 60(b)(2); <u>Coastal Transfer v. Toyota Motor Sales</u> 833 F2 208, 212 (9th Cir. 1987); <u>Atkinson v. Prudential Property Company</u> 43 F3 367, 369 (8th Cir. 1994)).

Debtor submits his declaration and evidence that could sustain these grounds before the court for the following reasons. First, in regard to the alleged purchase and sale of high tech equipment which was the alleged reason for the Hong Kong loan in February 2002, Tony Fu said at his deposition that he did not know who were the seller and buyer of the high-tech products. [Fu deposition, June 17, 2005: Page 7:5-14]:

> Q. And on the sale of the high-tech equipment, do you know who was doing the selling and who was doing the buying?
> A. Who was dealing the selling? Okay, you mean, um, how he conduct his business?
> Q. Yes.
> A. That kind of doing I don't know. He told me, Demas, he told me that he got that bunch of equipment, high-tech equipment, from Singapore from a friend of his.

Fu changed his testimony at trial, saying for the first time that the seller of the high tech products was "Jimmy." [July 26, 2005, TR 213:19-214:5]

> Q In your deposition, you told me that the person or company that -- the people that he was buying the products from, the components or whatever, the high tech equipment I think you called it -- that those people were in Singapore, correct?
> A The contact. His contact, the man, the business contact to sell him the equipment is a single man called Jimmy. That's what he told me.
> Q Okay. And so he was going to buy equipment, either by or through Jimmy -- this is according to what Demas told you, correct?
> A That was correct.

By contrast, Fei Sing Fu said at trial that the seller was **in Hong Kong** during Feb/2002.

[July 26, 2005, TR 27:4-28:1]

> Q Did Mr. Yan explain to you what transaction he was seeking to finance with the loan he was going to borrow from you and Mr. Leung?
> A Computer software.
> Q Okay. Did he say that it was a deal in which he was going to act as a buyer or a seller of computer software?
> A He would sell the parts to mainland China.
> Q And did Mr. -- so Mr. Yan was going to acquire – told you he was going to acquire some kind of parts or equipment or components and sell them to mainland China, correct?
> A He would buy the computer parts and sell it to China.
> Q Okay. Now did Mr. Yan tell you where he was going to buy the computer parts?
> A He said from Singapore.
> Q Did Mr. Yan mention whether he had had any meetings or traveled to Singapore in connection with this transaction?
> A He said his client was already in Hong Kong, and that was why he needed 3.6 million Hong Kong currency.
> Q He said his client, meaning who, the buyer or the seller?
> A The client who sold him the parts.
> Q And that would be the person from Singapore, correct?
> A Yes.

(Declaration of Demas Yan in Opposition to Compromise, [hereafter "Yan"] ¶ 1-4 and Exh. 3, 4 and 5). The "Jimmy" referred to is a friend of debtor's, Jimmy Thia. Debtor was in Singapore in May, 2006 in connection with his employment. on business. On that trip, he talked to Jimmy Thia. He recalled that he was with the debtor in Phuket, Thailand during the time that the alleged loan was made and that Tony Fu testified that they were trying unsuccessfully to contact debtor about return of the loan. Jimmy Thia can also testify that he was not in Hong Kong as Fei Sing Fu said, and that debtor never discussed with him buying equipment to sell to China. (Yan, ¶ 5 and Exh. 1).

The reason this is new evidence is that Fu testified in deposition that he did not know the seller of the equipment. There was no way for debtor to obtain rebuttal discovery on the alleged seller, especially in light of time and expense constraints before trial. (Yan, ¶ 6).

This new evidence would change the outcome of the trial because the plaintiff's witnesses testified that the reason they gave Yan a cash loan of HK$3.6M was because he needed to buy equipment from Singapore. If they say that Jimmy Thia was the seller and he denies it, there is direct proof that there was never a reason for a loan. (Yan, ¶ 7).

Another issue of new evidence is whether Yan knew one of the alleged Hong Kong lenders, Leung Hing Lau. Since Yan had never met him, he did not and still do not know what

his occupation was before he died in 2003. In the state court law suit, Yan asked Stella Chen at her deposition about Leung's occupation, and she said she did not know. (Yan, ¶8 and Exh. 3). Fei Sing Fu said at trial that Leung was very rich and an executive at a very big real estate company called "Cheung On Real Estate." [July 26, 2005, TR 29:9-13] Debtor learned from a Hong Kong detective, John Yeung, that there is and was no such Company as "Cheung On Real Estate." He also found that Leung was actually a professional photographer with some of his works exhibited at the Hong Kong Heritage Museum. (Yan, ¶ 8, and Exh. 2).

The reason this is new evidence is that the plaintiff's witnesses did not say that Leung was an executive at Cheung On Real Estate until trial, so Yan could not do any discovery on such a company. The evidence that such a company does not exist is substantive evidence. This would change the outcome of the trial because the plaintiff's witnesses claimed that the alleged loan was in cash because Leung is very rich and he is an executive at a very big company. They have not provided any proof of source of funds for the loan. If Leung was not an executive at such a company because there is no such company, then that would undercut the evidence that there was the means to give Yan the alleged cash loan. (Yan, ¶¶ 9-10).

Debtor further submits that the Trustee and the court should further consider the availability of grounds under FRCP Rule 60(b)(6). In the court's Amended Decision after Trial, March 3, 2006, the Court said:

> (24) Yan's testimony that the Note represented Fu's rights under the Joint-Venture Agreement is undermined by his own testimony regarding the operation of that Agreement. Yan testified that the $450,000 payable under the Note represented Fu's 25 percent interest in the sales proceeds of the Property, which at the time the Note was signed, the parties estimated would be about $1.8 million. Such a calculation proceeds from the assumption that Fu's share was to be calculated from gross proceeds (i.e., without deducting the mortgages to be paid from the sale price). In contesting payment of Suen's claim to 25 percent of the $2.3 gross proceeds of sale, however, Yan testified that the shares each party was to receive under the Joint-Venture Agreement were to be calculated from net proceeds after the mortgages on the Property at the time the Agreement was signed were paid. If believed, this testimony severs the asserted link between the amount due under the Note and the amount due under the Joint-Venture Agreement. Whether or not believed, the inconsistency in testimony undermines Yan's credibility.

[AMENDED DECISION AFTER TRIAL, March 3, 2006, Pages 9:22-10:11]. But, as maintained in his Rule 59 motion earlier this year, Yan's testimony at trial was different from

what the court found:

> Q. Mr. Yan, if you could open the exhibit book from Phase 1 to Exhibit D to look at the - not the plaintiffs' - do I have it here? Oh, maybe look at that. I want you to look at the contract again real quickly, Exhibit D.
> A. Okay.
> Q. And if I could just read over your shoulder here for a minute. With regard to paragraph, it says, "The said property is either up for sale or rent. The proceeds shall distribute according to the ownership percentage." That particular provisions, what - was there an understanding between you and Mr. Fu as to what were the proceeds?
> A. I don't think we were quite definite, because this agreement was drafted by me and with Tony's input. And, frankly, it's just very informal. I don't think we ever put much thought into the legal meaning of the word "proceeds."
> Q. Does that - are you familiar with the term "seller's proceeds"?
> A. Yes.
> Q. Would that be the equivalent of seller's proceeds?
> A. That would be. Then that's after - then that's of the sales price minus any existing encumbrance on the property and closing costs.
> Q. Is that what the term "proceeds" means in the case of this contract?
> A. I - honestly - honestly speaking, I don't think we would define what - what that meant.
> Q. Okay. So you didn't discuss it one way or the other?
> A. No.

[Yan Direct 12/1/05, TR 60:21-62:1] (Yan, ¶11 and Exh. 4).

Yan respectfully submits that the incorrectly recalled and interpreted the testimony at trial to say that he testified the term "proceeds" was to be "net." As the Court described it, it was a very close case. The $450,000 representing the 25% estimate value is the direct link between the Promissory Note and the Construction Agreement. The Court said that this link was broken because of Yan's testimony that the proceeds were "net." but he never said that. So the link is not broken and the finding is not justified. Further, if from this, the Court assumed that Yan's credibility was in question, the Court may not have weighed all of the evidence in a fair light. For sake of a fair trial and equity, the Court should order a new trial under FRCP Rule 60(b)(6). (Yan, ¶ 12-13).

### 4. Conclusion

For the foregoing reasons, Yan questions whether the compromise should be confirmed without the court and the Trustee considering these points in terms of the "solidity" of Chen's case. Yan submits that under the authorities above-cited, while the court does not presently have

| | |
|---|---|
| 1 | the jurisdiction to vacate or modify the judgment on granting the motion, the court can and does |
| 2 | have jurisdiction to consider and pronounce whether in fact, it would consider such a motion. |
| 3 | Yan therefore respectfully requests the court's consideration of these issues, as this is the only |
| 4 | practical forum, in light to the timing issues of the compromise motion, to consider these issues |
| 5 | and new evidence. |

DATED: July 17, 2006          LAW OFFICES OF MARK J. ROMEO


By /s/Mark J. Romeo
MARK J. ROMEO
Attorneys for Debtor