UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 04-33526 TCJE |
| | ) Chapter 7 |
| | ) |
| DEMAS WAI YAN aka Dennis Yan, | ) <u>TRIAL RE OBJECTION to</u> |
| | ) <u>PROOF of CLAIM of</u> |
| | ) <u>SIERRA POINT LUMBER</u> |
| Debtor. | ) |
| | ) |
| | ) Wednesday, May 30, 2007 |
| | ) San Francisco, California |

<u>Appearances</u>:

For Janina M. Elder,      Joanne M. LaFreniere, Esq.
Trustee:                  Law Offices of Stromsheim & Associates
                          201 California Street, Suite 350
                          San Francisco, California  94111


For Sierra Point         Marc D. Coopersmith, Esq.
Lumber, Claimant:        Brian P. Hedstrom, Esq.
                         Golden State Lumber, Inc.
                         719 Southpoint Boulevard, Suite C
                         Petaluma, California  94954




Digital Court            United States Bankruptcy Court
Recorder:                Clerk of the Court
                         Jane L. Galvani
                         235 Pine Street, 23rd Floor (94104)
                         Post Office Box 7341
                         San Francisco, California  94120-7341
                         (415) 268-2366



Certified Electronic     Palmer Reporting Services
Transcriber:             P. O. Box 30727
                         Stockton, California  95213-0727


                 Proceedings recorded by digital recording;
        transcript produced by federally-approved transcription service.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 1 of 28

1    Wednesday, May 30, 2007                    9:36 o'clock a.m.

2                         P R O C E E D I N G S

3            THE CLERK:  In the matter of Demas Yan.

4            MS. LaFRENIERE:  Good morning, Your Honor.  Joanne

5    LaFreniere on behalf of the trustee, Janina Elder.

6            MR. COOPERSMITH:  Good morning, Your Honor.  Marc

7    Coopersmith and Brian Hedstrom on behalf of creditor Sierra

8    Point Lumber and Plywood Company, Inc.  And in the audience we

9    have our two witness, Robert Bowler and Jodi Wicks.

10           THE COURT:  Okay.  I've read your stipulation and

11   facts.  I think there are a couple other preliminary issues we

12   need to sort out.

13           MS. LaFRENIERE:  Right, Your Honor.  Preliminarily is

14   that the trustee's motion *in limine* that deals with a couple of

15   topics.  One is the — is the presentation of additional

16   documents by Sierra Point a couple weeks ago.  And the trustee's

17   position is that it is not fair at this juncture to have those

18   submitted into evidence.  Also this is supposed to be a

19   stipulated trial with stipulated facts and no witnesses.  And I

20   see that Ms. Wicks is here.

21           And — and then the final topic, of course, is just the

22   trustee wishes to *voir dire* Mr. Bowler with respect to his

23   expert testimony.

24           THE COURT:  Okay.  The exhibits — well, let's go

25   through the expert report.  You want to cross-examine the

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 2 of
28

1  expert?  You basically want to examine the expert?  Voir dire

2  exam the expert?

3            MS. LaFRENIERE:  Well, —

4            THE COURT:  And, perhaps, if he's qualified you want

5  to cross-examine him with respect to the amount?

6            MS. LaFRENIERE:  That's right, Your Honor.  First —

7  first we would like an opportunity to *voir dire* him and have the

8  Court rule on — on whether he is helpful to the Court as an

9  expert in this matter.

10           And then if he's accepted as an expert, then we would

11  like to cross-examine him.

12           THE COURT:  And, I take it, from reading the report

13  basically the report is that the — there may have been taxes

14  that should have been paid, withholding taxes, and there may

15  have been other returns that should have been filed?

16           MR. COOPERSMITH:  Yes, —

17           THE COURT:  That's the gist of it?

18           MR. COOPERSMITH:  That's pretty much the gist of it

19  and als- — yes.

20           THE COURT:  Okay.  What — with respect to the

21  documents — and let me get them here — I've looked through them.

22           These are documents that, as I understand it, — and

23  maybe I'm wrong — the stipulation says — and I have to find the

24  stipulation again — that in — with respect to the 23rd Street

25  property, which was Mr. Yan's property, not — not Mr. Fu's or

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 3 of
28

1    his former wife's property.

2           MS. LaFRENIERE:  That's right.  The 23rd Avenue one

3    was owned by Mr. Yan.

4           THE COURT:  The stipulation says that — basically that

5    Mr. Fu had been doing work on that property up until the end of

6    April of '0- —

7           MS. LaFRENIERE:  August.

8           THE COURT:  — the end of August of '02; that Mr. Yan

9    basically canceled the contract with Mr. Fu and eliminated any

10   further involvement by Fu on that property because Yan had

11   developed his and obtained his own contractor's permit; and that

12   thereafter in — let me see my notes here — in late '02 Mr. Yan

13   direct- — purchased some supplies from the creditor; had them

14   delivered to 23rd Street: and, as I understand it, fully paid

15   for it himself.

16          MS. LaFRENIERE:  Well, it is correct that — that the

17   invoices show that — that materials went to 23rd Avenue and that

18   Mr. Yan paid for it, but who ordered it and whether Mr. Yan had

19   any idea that it was being ordered on the account or any of the

20   circumstances around it, are not developed at all.  And so the

21   inference is —

22          THE COURT:  But — but there's — the stipulation —

23   there — let me ask here.  The parties have stipulated that — I —

24   let me go back to the stipulation.  I need to find that here.  A

25   second.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 4 of 28

1    I'm trying to figure out what the import of this is,

2    in any event.  I'm sorry I'm not better organized here.

3    MR. COOPERSMITH:  Your Honor, the import of this is

4    that bills were sent to SFBPI at the Post Office box that my

5    company — that the client had, which happened to be Tony Fu's

6    personal Post Office box, but Demas Yan paid those bills, bills

7    for SFBPI.  And he paid them three months in a row on his

8    personal, not the business' credit card.  And I don't think

9    that's explicit in the stipulated facts.

10   THE COURT:  But there is not any net amount due?

11   MR. COOPERSMITH:  Correct.  There's no money due.

12   THE COURT:  Okay.

13   MR. COOPERSMITH:  There's no money due.  That's...

14   THE COURT:  So the — the sole point is that there is

15   some — and let me understand this — that there is some evidence

16   that Mr. Yan — that somebody ordered materials for 23rd Street,

17   which was for Mr. Yan's benefit, under this account and that Mr.

18   Yan paid for it personally.

19   MR. COOPERSMITH:  Yes, after the fact.  That is, the

20   bills are sent to SFBPI, but he pays for it, and it's not for

21   the Chenery Street project.

22   THE COURT:  Yeah, okay.  Okay.  And that's the sole —

23   that's the sole effect of it, that he basically — he — in one

24   instance he used the account for something that wasn't Chenery

25   Street.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 5 of
28

1      MR. COOPERSMITH:  Yes.  And —

2      THE COURT:  And paid for it himself?

3      MR. COOPERSMITH:  Yes.  And he knew the account was

4  being used by Tony Fu.

5      THE COURT:  Well, —

6      MS. LaFRENIERE:  That — that go- —

7      THE COURT:  — it's not clear who ordered this stuff.

8      MR. COOPERSMITH:  That's true.  It's not clear who

9  ordered it, but the bill is sent to Tony Fu's personal P. O.

10  box.

11      THE COURT:  Now I thought —

12      MR. COOPERSMITH:  How would Demas Yan get the bill?

13      THE COURT:  I thought SFBPI — that's this — this

14  corporation.

15      MR. COOPERSMITH:  It did use that P. O. box, yes, Your

16  Honor.  But it's Tony Fu's P. O. box.  They just — they needed

17  to use some address, so they used Tony Fu's personal P. O. box

18  so he can access it.

19      MS. LaFRENIERE:  Your Honor, absent — absent testimony

20  with respect to this, the import of this is — is all conjecture.

21  And basically what counsel has done in — in the trial brief is

22  to spend a couple of pages doing precisely that.

23      And because there's — there's no evidence as to who

24  ordered it, how Mr. Yan came to know about the — the invoices

25  and pay them, whether he knew — you know, there's — there's

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 6 of 28

1  absolutely no context.  And, therefore, I think it's extremely

2  prejudicial to introduce these with the intent to show that this

3  is going to the *prima facie* case of proving an *alter ego* —

4          THE COURT:  Okay.

5          MS. LaFRENIERE:  — liability.

6          THE COURT:  Now let me ask one more question.

7          You mentioned witnesses.  What —

8          MR. COOPERSMITH:  Well, —

9          THE COURT:  — other witness besides your expert?

10         MR. COOPERSMITH:  — with regard to these documents,

11 that's Jodi Wicks, the credit manager from Sierra Point.  She's

12 here today.  And her testimony is only — I only have her here to

13 bring — get those documents into evidence.

14         I mean the Court obviously can reach whatever

15 conclusions it wants once they're in evidence.  But we'd argue,

16 obviously, that's logical to believe that it's mailed to the

17 address it says.  The address everyone stipulated to is the

18 personal P. O. box for Tony Fu and that the bills were paid by

19 Demas Yan, because there are credit card slips from Demas Yan

20 showing he paid it on his personal credit card, not the

21 business' credit card.

22         In terms of the prejudice that opposing counsel is

23 arguing, I agree it is prejudicial.  But it's not the type of

24 prejudice that results in the Court excluding evidence.

25         THE COURT:  Which is undue surprise basically.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 7 of
28

1    MR. COOPERSMITH:  Well, "undue surprise," she's

2  surprised.  I mean I had told her we're trying to find these

3  documents, but these documents were never asked.  She asked for

4  documents about the proof of claim.  This isn't the subject

5  proof of claim:  How do we come up with how much money is owed?

6  This stuff was paid.

7    If she wanted bills that were unpaid, she could have

8  asked for bills unpaid.  She — she says Request Number 12, which

9  is communications with Demas Yan, these were —

10    THE COURT:  Okay.  Let me — let me do this.  Give me

11  about five minutes.  And I'm going to say something to you that

12  will focus your minds very clearly.  Okay.

13    And then — and I — among other things, I will address

14  this.  Just give me five minutes.

15    MS. LaFRENIERE:  May I make one — one small comment —

16    THE COURT:  Yes.

17    MS. LaFRENIERE:  — on Mr. Coopersmith's point?  And

18  that is that the proof of claim asserts *alter ego*.  The proof of

19  claim is not the underlying judgment.  The proof of claim — the

20  only way that the proof of claim is to be allowed is —

21    THE COURT:  Oh, I understand.

22    MS. LaFRENIERE:  — is if — is if *alter ego* is proved.

23    THE COURT:  Yes.

24    MR. COOPERSMITH:  Number 12 doesn't mention proof of

25  claim.  It asks for communications with Demas Yan.  These are

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 8 of
28

1   bills sent to the corporation.

2           THE COURT:  I understand.  I'll be back to you in a

3   couple minutes.

4           MS. LaFRENIERE:  Thank you, Your Honor.

5           MR. COOPERSMITH:  Okay.  Thank you, Your Honor.

6           THE COURT:  Thank you.

7           THE CLERK:  All rise.

8       (Recess taken from 9:47 a.m. to 9:57 a.m.)

9           THE COURT:  I'll be with you in just a second.

10                  <u>RULING BY THE COURT</u>

11          THE COURT:  Okay.  What I am going to do here is give

12  you a ruling on the motions *in limine* in the context of their

13  meaning in the whole case.  And I'll let you comment on the

14  ruling, which is a ruling on the whole case as well as the

15  motion *in limine*, since it's — we have stipulated facts.

16          Okay.  The ruling on the motion *in limine* and the

17  case, which are together and which are tentative at this point

18  in that I will let you comment on them, is that the documents in

19  these order forms, these invoices I guess is the best — just

20  call them invoices — relating to property delivered to 23rd

21  Street should be admitted.

22          The expert report should be admitted.

23          And not — neither of them matter in the outcome of the

24  case in that even accepting these, this evidence, as showing

25  that the debtor — or that the corporation did not fully comply

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 9 of 28

1   with its tax-reporting and tax-paying obligations, and that Mr.

2   Yan at one point ordered materials for another property under

3   the umbrella of this account don't, together with the other

4   evidence, make it appropriate to hold him to be the *alter ego*

5   and that the claim must be denied.

6              Now let me go through this in a bit more detail.

7              First of all, the test here under California law for

8   determining whether corporate separateness should be disregarded

9   for the *alter ego* test has two main parts.

10             First of all, there must be a unity of interest

11  between the corporation and the shareholders to be charged with

12  liability.

13             And, second, there must be some unfairness in applying

14  the shield of limited liability in the circumstances in

15  question.  In other words, it must be unfair with respect to

16  this particular creditor in the particular circumstances to use

17  the shield of limited liability so that they will not get paid

18  in full and resort should be had to the shareholders of the

19  corporation.

20             Now the California cases have said very clearly that

21  this is very much a facts-and-circumstances case, very fact

22  intensive.  And when one considers whether to disregard the

23  corporate shield of limited liability, one does so in the

24  context of a particular claimant.  One doesn't determine that

25  the corporation is to be disregarded for all purposes.  One

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 10 of
28

1   doesn't have to go that far.  The claimant just has to show that

2   it's appropriate to disregard the limited liability rule in this

3   particular circumstance.

4           And, lastly, and I think this is the whole nub of the

5   case, California courts have said very clearly that the person

6   to be charged with individual liability, the person against whom

7   the corporate veil is to be pierced against, must be the party

8   responsible for the abuse in question.

9           Now I want to read you in this regard from a case of

10  the California Court of Appeal, the Second District.  The name

11  of the case is *United States Fire Insurance Company versus*

12  *National Union Fire Insurance Company*.  The citation is 107

13  Cal.Appellate 3d, page 456.  And I am quoting from page 472.

14          And that quote is as follows:  "The fraud or inequity,

15  the elimination of which legitimately invokes the doctrine, must

16  be that of the party against whom the doctrine is invoked.  And

17  such party must have been an actor in the course of conduct

18  constituting the abuse-of-corporate privilege or must be seeking

19  some inequitable advantage based upon the fiction of separate

20  existence."

21          Now in this case it is not appropriate to disregard

22  the corporate separateness as against Yan because, for the

23  reasons I'm about to describe in more detail, Yan was not

24  responsible for the circumstances that would make it inequitable

25  to enforce the shield of limited liability.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 11 of
28

1      And even if the corporation, to some extent, didn't

2    fulfill all its obligations with respect to paying taxes and

3    even if Mr. — even if those documents are admitted showing that

4    Mr. Yan at one point ordered materials for his own use through

5    the corporation, the following facts I think are the most

6    important:

7      First of all, there was appropriate observance of

8    corporate formalities, given the size and nature of the

9    corporation.  The company was formally incorporated; that's

10   essential.  Directors and officers were selected.  The stock

11   ownership was specifically described in the corporate minutes.

12     I'm not sure whether certificates were ever issued,

13   but there was a clear record of who were the beneficial owners.

14     There's no evidence of any commingling of assets of

15   the individual shareholders and the corporation.  There was no

16   evidence of use of corporate assets for personal purposes.

17     At one point Mr. Yan ordered materials — or received

18   materials, whoever ordered them, on his individual property that

19   had nothing to do with the stated purpose of the corporation.

20   But he also individually paid for those.  The connection between

21   that ordering of asset- — of materials for the 23rd Street

22   residence and the corporation was very limited.  Corporate

23   assets were not used to pay for it.

24     They merely used that account, which had been

25   established for other purposes.  And there was no inequity to

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 12 of
28

1 the creditor here because of that, because Yan paid for it

2 himself. He didn't run up a debt that he didn't pay for.

3       The corporation was quite clearly adequately

4 capitalized for its stated purpose of completing Chenery Street.

5 There were no debts unpaid from Chenery Street.

6       Indeed, it appears, from what I have in this

7 stipulation of facts that the corporation was more or less

8 informally wound up in 2002 with the closing of the bank

9 account. There's no evidence of any further activity in the

10 corporation at that point for its stated purpose in Chenery

11 Street.

12       Apparently, according to the stipulation, this

13 creditor was not an entity that was — for whom materials were

14 bought for Chenery Street. There's certainly no unpaid amounts

15 from Chenery Street.

16       The materials in question here ordered by Mr. Fu for

17 his own personal property were not ordered to further the

18 business purpose of the corporation. They were Mr. Fu's own

19 use. He did that over a very short period of time and thus

20 there is — because they happened so fast — there's no evidence

21 that Mr. Yan in any meaningful way tolerated the use of the

22 corporate account for Mr. Fu's purchasing of these materials.

23       They all happened in about a little over a month in

24 2003 when the corporation had — from — again, based on what we

25 have here — had pretty much wound down its activities.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 13 of 28

1       Now it would be very appropriate I think under the

2 circumstances of what happened here to pierce the veil with

3 respect to Mr. Fu, if it were necessary.  But it's not

4 necessary, since he guaranteed this account in any event.

5       But he is the only person who committed an act that

6 was unfair toward Sierra Point in any way connected to the

7 corporation.

8       So I just don't see the necessary connection here, any

9 unfairness perpetrated or any benefit inappropriately obtained

10 by Mr. Yan that's related to this question and conduct.  And,

11 again, it's a very, very fact-specific circumstance.

12       So — and, again, I'll let you speak to all these

13 questions.  But I think that there's — I don't think we need to

14 really delve too much into whether there's undue surprise with

15 respect to these documents from — relating to Mr. Yan's

16 purchase.  They were only tangentially related to the

17 corporation, because he didn't use corporate assets even to pay

18 for them.  And they were, in fact, paid for.  So that I just

19 don't see it makes any difference whether that's admitted.

20       I think the fact that the debtor didn't pay its taxes

21 is a factor that in some case, a very, very close case, might

22 be, might be enough to tip it over to show that they really

23 weren't acting like a corporation.  Although not paying debts

24 would — doesn't have much to do with separateness, other than

25 the fact of whether, you know, it's — whether you're adequately

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 14 of
28

1   capitalized and whether you're stiffing creditors who otherwise

2   owed money.

3           But I'm glad to let you speak to this further, since I

4   haven't given you a chance to have a closing argument after the

5   stipulation effects.  So why don't we just sort of go to that.

6   And you can comment upon this now.

7           What's really clear, it would — what's really hard to

8   get in a case like this and what the citation I gave you relates

9   to is in most of the veil-piercing cases the activity is to

10  further the goal of the corporation, the business of the

11  corporation.  And when — and in the few cases, where you have

12  veil-piercing, when there's more than one shareholder, there's

13  not a question as to whether the — it's a frolic by the act —

14  the debt was something unrelated to the stated purpose of the

15  corporation, and for that person's sole benefit that did not

16  further the corporate good.  That doesn't come up very often.

17          We do have that in this case.  Mr. Yan didn't benefit

18  a whit from this, from the ordering of these materials.  There's

19  no evidence of that whatsoever.  And I think the doctrine stated

20  here makes sense, and I think that they provide a way to deal

21  with this unusual situation where you have an assertion of

22  veil-piercing, where there is more than one controlling

23  shareholder, and where the debt was not incurred in furtherance

24  of corporate business.

25          That's why I think this is important.  Now you folks

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 15 of
28

1    talked about it before when I found a Nevada case.

2            And, Mr. Coopersmith, you said that wasn't the law of

3    California, but apparently it is.

4            I want to add one more thing, by the way.  I cite-

5    checked this.  And it's been cited — this case has been cited a

6    couple times, not too many times, but all with approval both

7    inside and outside of California.  It hasn't been criticized or

8    overruled or no court has failed to follow this case on that —

9    on that point.

10            So, go ahead.  I think Mr. Coopersmith ought to go

11    first.

12            MR. COOPERSMITH:  Thank you.

13            THE COURT:  You have the uphill climb.

14            MR. COOPERSMITH:  Yes, I see that.

15            Your Honor, I think there's one fundamental question

16    that the trustee has never answered and this Court should ask:

17            What did Demas Yan think Sierra Point was going to do

18    when Tony Fu went into the yard in September of 2003 to purchase

19    lumber on credit in the name of SFBPI?

20            Demas Yan knew there was a credit account.  He knew

21    Tony Fu opened up the credit account.  He knew that account was

22    used for more jobs than just the Chenery Street job.  Just as

23    importantly, Demas Yan believed that Tony Fu embezzled money

24    from the business.

25            There are six checks written out in the sum of $54,000

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 16 of 28

1  to Tony Fu.  Now the minutes for November of 2000 said neither

2  Tony Fu nor Demas Yan were supposed to receive a salary.  Four

3  of those six checks are signed by Demas Yan.  But it's $54,000

4  made payable to Tony Fu.

5        Further, Tony Fu apparently wrote two checks for some

6  $26,000 to buy a personal motor vehicle for himself.  And he

7  wrote those checks from the account of SFBPI.

8        Now Tony — now Demas Yan did close that account.  And

9  that account was closed about a year before the subject

10  purchases were made at Sierra Point.

11        And so what you have there, Your Honor, is even though

12  Demas Yan knew Tony Fu opened up the credit account in the name

13  of SFBPI with Sierra Point, believed Tony Fu embezzled money

14  from the business and, in fact, ended his business relationship

15  with Tony Fu, Demas Yan never told Sierra Point to close the

16  account.  He never told them, even though he went in there

17  multiple times to pay bills that were owed by the corporation.

18        This is not a crime.  A mistake was made, but the law

19  sets certain standards.  Those standards are designed to protect

20  us all, including Sierra Point.

21        The failure to follow corporate formalities is a

22  factor to be considered in whether or not to pierce a corporate

23  veil.  The courts recognize that.  There are cases we cite, the

24  *Riddle* decision from California; the Eighth Circuit's *In Re*

25  *Ozark Restaurant Company, Inc.* decision.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 17 of
28

1      Demas Yan prepared all of the corporate documents.  On

2  paper they look fine.  However, they inaccurately reflect how

3  this business was operating.  Specifically, Demas Yan assumed

4  complete responsibility for capitalizing the corporation.

5      In the November 2000 minutes it says he's going to get

6  50 shares of stock; Tony Fu will get 50 shares of stock.  The

7  stock registry shows that in June 2001, some seven months later,

8  they both received the 50 shares of stock.

9      Demas Yan contributes $15,000.  It's called,

10  "capitalization."  But Tony Fu received his 50 shares of stock

11  at the same time.  Those November 2000 minutes say Tony Fu only

12  gets that stock after contributing six months of labor.  That

13  means that was not initial capitalization of 15 grand.  That was

14  15 grand six months into the business.

15      And the money is constantly being spent.  Yan deposits

16  money into the account; it's spent the next week.  That's not

17  capitalization.

18      The Ninth Circuit said in the *Slottow* decision:

19  Inadequate capitalization alone is a basis for piercing the

20  corporate veil under California law.  That's a Ninth Circuit

21  decision.  It's never been overruled.  It says:  Inadequate

22  capitalization alone is a basis for piercing the corporate veil.

23      And the Ninth Circuit cited the California Supreme

24  Court, the *Minton versus Caveney* decision for that proposition.

25      And there's a case the trustee cited and we cite.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 18 of
28

1  It's a Northern District of California decision, *Shanghai*

2  *Automation Instrument Company, Limited*.  There the court said,

3  quote:  An inequitable result exists where an unsatisfied

4  creditor exists in connection with an abuse of the corporate

5  form.

6         SFBPI spent money on the construction of a building on

7  the Chenery Street land owned entirely by Demas Yan, some

8  $262,000.  Now all that money came from Demas Yan.  But is that

9  capital?  He never got any more stock from the company.  So that

10 was not a capital contribution in exchange for stock.

11        And he couldn't gift it to the company, because it's a

12 for-profit business.  You cannot give money to a noncharity.

13 That's a corporation.  That money has to be treated as a loan.

14        That loan further undermined the financial condition

15 of SFBPI.  Instead of having capital, it has — it's never

16 capitalized and, instead, it just takes on more debt repayable

17 to Demas Yan at his discretion at any time.  SFBPI received no

18 benefit from that.

19        If the corporation was adequately capitalized, he

20 would have capitalized it with about $300,000, the cost to build

21 Chenery Street.  Right?  They spent $262,000.  Then he spent

22 some of his own personal money, not through the corporation, to

23 finish up the job.  He never capitalized it.

24        If the corporation had been adequately capitalized, my

25 client wouldn't need to be here today.  And that's the *Polaris*

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 19 of
28

1  decision that the Court cited from Nevada where there are these

2  two shareholders; one takes money out; he does it informally.

3  It's not appropriate how he does it, but it's an exchange for

4  labor he provided.  It's really wages.

5            The court looks at that and says, "You know, he didn't

6  do it right.  That's a technical formality he didn't follow, but

7  we're going to let it slide."

8            On the other hand, this other guy, he takes it and

9  spends money for gambling.  Well, that's not legitimate.  Demas

10  Yan takes money, spends it to build a project.  That project he

11  now owns.  He's the beneficiary of a surplus bankruptcy estate.

12  My client's an unsatisfied creditor, just like the *Shanghai*

13  decision says.

14            The corporate formality — you know, in terms of

15  corporate formalities, they're only supposed to work on Chenery

16  Street, but they didn't.  It kind of reminds me of a story my

17  grandpa told me about my dad.  When my dad's a little kid, my

18  grandpa, my dad and my uncle are walking down a hill.  This is

19  in this area.  And my dad sees a tire on the side of the road.

20  And when my grandpa's not looking, he eggs my Uncle Marshall on,

21  you know, push — roll that tire down the hill.  And, of course,

22  my Uncle Marshall does it.

23            At the bottom of the hill is a liquor store.  Well, my

24  dad didn't push that tire down the hill, but my grandpa punished

25  him anyway.  And we all know why.  My dad set it in motion.

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 20 of 28

1    There's a similar law in criminal law.  If a bartender

2  returns keys to an obviously-intoxicated patron, and that patron

3  drives off and hurts someone, the bartender, too, is subject to

4  criminal liability, even though he or she doesn't get behind the

5  wheel.

6    Here we have a situation where Demas Yan could have

7  told Sierra Point:  Hold on.  SFBPI can only buy lumber for the

8  Chenery Street project.  He had multiple opportunities.  He goes

9  in three times to pay the bill.  He doesn't tell them that.  He

10  could have told them:  Tony Fu does not have authority to open,

11  let alone maintain, a credit account.  But he doesn't do that.

12    He could have told them:  Hey, we're closing shop.

13  You'd better close this credit account.  He doesn't do that.

14    He could have told them:  I fired Tony Fu; he no

15  longer works for SFBPI.  He doesn't do that.

16    In the story I told about my dad and my grandpa, we

17  have a situation where people put the wrongdoing in motion.

18  Demas Yan put the wrongdoing in motion, but he did more than

19  that.  He never missed an opportunity to miss an opportunity to

20  tell Sierra Point the true nature of SFBPI.

21    The whole idea of the *alter ego* doctrine is that

22  corporations exist by statutory privilege.  If you follow the

23  formalities and you comply with the law, you have the

24  protections of a corporation.  But if you don't, if you shirk

25  those responsibilities, then the law won't give you those

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 21 of
28

1   protections.

2           Demas Yan only used formalities to protect himself

3   from liability, and he gave no regard for anyone else.  He did

4   what he thought was necessary.  Again, it's not a crime.  He

5   made a mistake.  But the law sets certain minimum standards.

6           And all we're asking this Court to do is to hold him

7   to those standards.  We're asking the Court to assume the

8   corporate records are true.  We're asking the Court to assume,

9   yes, he didn't capitalize the corporation, because this money is

10  used to meet ongoing business expenses.

11          Yes, the bills were sent to SFBPI.  He knows it.  He

12  pays it on his personal credit card.  Yes, Tony Fu is taking

13  money out, using it as he will.  Demas Yan is convinced Tony

14  Fu's an absolute crook.  He knows Demas — he knows Tony Fu is

15  using an account with Sierra Point, but he doesn't tell us

16  anything.

17          I mean who's — are we perfectly innocent?  Could we

18  have done something better?  We could have done something

19  better, I'm sure.  I don't know what, though.  But clearly if

20  anyone is not innocent, Demas Yan isn't innocent.  He's going to

21  walk out of here with over a million dollars.

22          My client is the one who got stiffed.  He's got a

23  building.  He could have told us:  Stop.  He never told us to

24  stop.  What did he think we were going to do?  That's a

25  fundamental question.  What did he think we were going to do?

1    He knew there was an account.  He knew Tony Fu was

2    using it.  What did he think Sierra Point was going to do?

3    There's inequity, Your Honor.  The Court thinks there's no — the

4    company was capitalized.  It wasn't capitalized.  There's no

5    capitalization.

6    He uses it at his choosing for his benefit without the

7    regard for others.  And he puts a point person in charge who is

8    a crook, an absolute crook.  He's convinced of it.  He describes

9    the man as a crook.

10   We all agree, this guy is a bad guy.  That's the guy

11   he puts in charge.  And he doesn't say:  Hey, Sierra Point,

12   don't get suckered.

13   I mean how — how does the Court answer that?  What did

14   Demas Yan think Sierra Point was going to do when Tony Fu went

15   into the yard in September 2003 to buy material on credit in the

16   name of SFBPI?  What would Demas — what did Demas Yan think?

17   What would he have thought would happen?

18   He didn't tell us anything.  What were we supposed to

19   do?

20           THE COURT:  Okay.  Anything more?

21           MR. COOPERSMITH:  That's it.

22           THE COURT:  Ms. LaFreniere.

23           MS. LaFRENIERE:  Just — just a couple things I'd like

24   to address.

25           One is that Sierra Point keeps ma- — Sierra Point

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 23 of 28

1  makes leaps from one point to the next without — without a

2  proper nexus.  For instance, Sierra Point alleges that Yan fired

3  Fu from the corporation.  That never happened.

4      Yan took Fu off of the 23rd Avenue project, but that's

5  not the same thing as firing somebody from a corporation which

6  is not something that a corporation would do.

7      Sierra complains that — that Yan took money from the

8  corporation for his benefit.  Yan never took any money from the

9  corporation.  All — all the checks to the — that the corporation

10  paid were paid to things — entities and things other than Yan.

11      Chenery Street was a successful project, and there

12  were no trade debts left on Chenery Street at all.

13      Their arguments about capitalization are — are simply

14  arguments.  There — there is no evidence that indicates that the

15  corporation was inadequately capitalized for its purposes.

16      And as far as what Sierra Point was supposed to do,

17  Sierra Point has protections that it can — it can take.  It can

18  do periodic checks on its customers.  If it had, it would have

19  been very easy to determine that there was potentially something

20  wrong with this corporation.

21      Sierra Point could have taken a mechanic's lien on the

22  property where the materials went.  It failed to follow through

23  on that.  The problems that arose from these invoices had

24  nothing to do with Mr. Yan, and it is fundamentally unfair for

25  the corporation to be pierced and for him to be held liable on

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 24 of 28

1  these particular debts which had nothing to do with Chenery and

2  nothing to do with Yan.

3          THE COURT:  Okay.  One of the — I am going to stick

4  with what I ruled before.  I just want to note a couple things.

5          Mr. Coopersmith makes the correct point.  You've

6  focused on the most troublesome point, which is that this was a

7  corporate account; it was set up.  And had there been evidence

8  that the — that Mr. Yan over a good period of time got, you

9  know, billing statements saying that, you know, so-and-so is

10 running up a lot of debt on this account, this corporate

11 account, Mr. Yan should at that point have taken steps to make

12 sure that he was not in any way participating or turning a blind

13 eye to what was going on.

14          The two things here that are relevant is that it looks

15 like, for the most part, from the stipulation that the

16 corporation had largely wound down its work in 2002, but the

17 project wasn't fully complete until late summer of '03.

18          It didn't necessarily make sense to go out and — until

19 the project was complete and go up and clean up all the accounts

20 and formally wind up the corporation and close all the accounts.

21          So there wasn't any longterm recklessness by Mr. Yan

22 in leaving this account out there.  There also wasn't any

23 recklessness of the sort that I think would rise to the level of

24 piercing the corporate veil here, because he had knowledge and

25 it should have had time to sink in, and he should have taken

1    action to prevent Tony Fu from using the account.

2          These charges were made over a short period of time.

3    Had they been made over a year, or something like that, then

4    you'd have to say:  Mr. Yan, you kept getting statements.  You

5    should have done something about this.  But it happened quickly

6    enough, and it stopped quickly enough that, given the fact that

7    that's the only kind of misconduct here by Mr. Yan, I don't

8    think it's appropriate to pierce the corporate veil as to him,

9    especially because, you know, the person responsible for this

10   action was — is on the hook personally.

11         And, again, the thing that's very, very important here

12   is that this is outside the purpose of the corporation.  Mr. Yan

13   didn't benefit from it at all, and the corporation did pay all

14   its debts, you know, related to its corporate purpose and from

15   which Mr. Yan benefitted in any way.

16         These are — it's a very — you know, these are — each

17   one of these cases is unique.  They're all — they're all

18   dependant upon their own individual facts.  And where there's

19   been this degree of honoring of corporate formalities of the

20   corporation so small where all the debts related to the

21   corporate purpose have been paid, where the — Mr. Yan has not

22   mingled his assets with those of the corporation in any way — he

23   used the account for something, but then paid for it out of

24   separate — his own separate funds.  That's the only connection

25   in which he took any action in which the use of this corporation

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 26 of 28

1  or its accounts was not limited to Chenery Street.  This just

2  isn't enough.

3         And there also wasn't enough — long enough, clear

4  enough knowledge that Mr. Yan was abusing the corporation to

5  hold Mr. Yan responsible for Mr. Fu's abuse.

6         Okay.  And you should keep an eye on Mr. Fu.  If he

7  wins his appeal, he will be getting some money, —

8         MR. COOPERSMITH:  Thank you, Your Honor.

9         THE COURT:  — which you can attach.

10         I assume that appeal is still pending, right?

11         MS. LaFRENIERE:  Yes, Your Honor.

12         THE COURT:  Okay.  Is it in the District Court?

13         MS. LaFRENIERE:  It's in the District Court.  He's —

14  he's only tangentially involved, because it's Mr. Suen, but,

15  yes, he's — he's —

16         THE COURT:  That's right.  That's right.

17         MS. LaFRENIERE:  — he's involved.

18         THE COURT:  Well, that's right.  He got rid of his

19  interest, so I don't know what interest he has in that, but...

20         I'll do an order.

21         MR. COOPERSMITH:  Thank you, Your Honor.

22         THE COURT:  All right.  Thank you.

23         THE CLERK:  All rise.

24      (The matter was concluded at 10:31 o'clock a.m.)

25                         —o0o—

Case: 04-33526   Doc# 278   Filed: 09/05/07   Entered: 09/05/07 14:20:14   Page 27 of 28

State of California          )
                            )     SS.
County of San Joaquin       )


          I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

          I further certify that I am not a party to nor in any way interested in the outcome of this matter.

          I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.



                                   Susan Palmer
                                   Palmer Reporting Services

                                   Dated September 4, 2007