Entered on Docket
July 15, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
JUL 11 2011
SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-10-1476-JuHPa |
| DEMAS WAI YAN, aka Dennis Yan, | Bk. No. 04-33526 |
| Debtor. | |
| THAI MING CHIU; CHEUK TIN YAN, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| CHARLES LI; DEMAS WAI YAN; JANINA M. HOSKINS, Chapter 7 Trustee, | |
| Appellees. | |

Submitted Without Argument
on June 16, 2011

Filed - July 11, 2011

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Thomas E. Carlson, Bankruptcy Judge, Presiding

Appearances: Dennis Yan, Esq. on brief for Appellants Thai Ming Chiu and Cheuk Tin Yan; and Reidun Stromsheim, Esq., Stromsheim & Associates on brief for Appellee Janina M. Hoskins.

Before: JURY, HOLLOWELL and PAPPAS, Bankruptcy Judges.

Appellant Thai Ming Chiu ("Chiu") appeals the bankruptcy

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

court's order denying his motion for reconsideration of the order disallowing his late-filed claim for $180,000. Appellant Cheuk Tin Yan ("Yan")[1] appeals from the same order disallowing his late-filed claim for $194,000 (collectively we refer to Chiu and Yan as the "Appellants"). We AFFIRM.

## I. FACTS

Demas Yan filed his chapter 11[2] petition on December 19, 2004. In Schedule F, debtor listed an undisputed liquidated debt of $38,000 owed to Yan, who is debtor's father. Debtor did not schedule any debt to Chiu, but did list a debt of $324,779 owed to Simon and Benita Chiu. Debtor identified Simon and Benita Chiu as his sister and brother-in-law in his Statement of Financial Affairs. Notice of debtor's case was sent to all scheduled creditors.

On September 15, 2006, debtor's case was converted to chapter 7 and appellee, Janina M. Hoskins, was appointed the trustee. On September 21, 2006, notice of the conversion and a claims bar date of January 23, 2007, was served on all scheduled creditors.

On February 27, 2009, the trustee filed and served on all scheduled creditors a Notice of Filing of Final Report of Trustee (the "Final Account"). The Final Account provided for payment in full of all allowed general unsecured claims, which

---

[1] Cheuk Tin Yan is also known as Chiuk Tin Yan.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

totaled $564,023, but proposed no payments to Appellants, who had not filed claims at that time. It also showed a surplus estate in the amount of $393,528.71, less a $75,000 reserve requested by the trustee, and less the amount of writs of execution served on the trustee by postpetition judgment creditors Sierra Point Lumber, Inc. ("Sierra Point") and Sing Tao Newspapers San Franciso Ltd. ("Sing Tao") (collectively, the "Judgment Creditors").[3] No objections were filed and the bankruptcy court approved the Final Account at a hearing on March 18, 2009.

On March 23, 2009, creditor Charles Li ("Li") gave notice to the trustee that he sought to reinstate his proof of claim, which he had previously withdrawn. Li was the assignee of a contractor's claim. With the possibility that Li's claim would be allowed, the court issued a distribution order which authorized the trustee to make all distributions specified in the Final Account and further provided that if Li refiled his

---

[3] Both Judgment Creditors obtained orders from the bankruptcy court permitting them to levy against the surplus funds that would otherwise be returned to debtor. The bankruptcy court docket shows that Sierra Point obtained a state court judgment on April 28, 2006, against San Francisco Building Professionals, Inc. ("SFBP") and Dong Xing Fu ("Fu"). Fu and debtor were the sole shareholders of SFBP and Sierra Point later discovered facts that led it to believe debtor was the alter ego of SFBP. It thus asserted that the judgment should be amended to include debtor as a judgment debtor and filed a proof of claim (claim no. 12) based on an alter ego theory. The trustee objected to the claim and the court disallowed it. However, for reasons that are not apparent from searching the docket, the amount of $13,149.80 was authorized to be paid to Sierra Point.
  The circumstances surrounding Sing Toa's postpetition levy in the amount of $97,789 are less clear.

-3-

claim and it was allowed, its status would be that of a late claim, subordinated to all timely filed claims. Finally, the order prevented the trustee from distributing any surplus funds to debtor or paying on any levy against the funds.

On April 27, 2009, Li refiled his claim in the sum of $221,000.

On October 23, 2009, three alleged creditors, including Chiu, filed untimely claims totaling $558,665: (1) debtor's mother, Tina Yan, filed claim no. 23 in the sum of $338,665; (2) Kaman Liu filed claim no. 24-1 in the sum of $40,000; and (3) Chiu filed claim no. 25 in the sum of $180,000. Debtor had not listed any of these debts in his Schedule F.

On December 1, 2009, the trustee filed and served her objections to the tardy claims.[4] The trustee objected to Chiu's claim because it was late-filed and the proof of claim showed it was for personal loans to debtor but did not attach documentation showing that the funds actually went to him.

On December 14, 2009, debtor, purportedly on behalf of Chiu, hand delivered to the trustee copies of checks totaling $180,000 that showed the funds going from Chiu to debtor.[5] Debtor also submitted a supporting declaration stating that he borrowed the funds from Chiu and had not repaid him. At that time, the trustee did not tell debtor whether the documents were sufficient to prove Chiu's claim. The trustee later advised

---

[4] Because only Chiu's claim is involved in this appeal, we do not discuss the trustee's objections to the other claims.

[5] Apparently these documents were not filed with the court.

-4-

debtor that Chiu would have until January 29, 2010, to respond to her objection to his claim. Chiu did not file a response or appear at the February 26, 2010 hearing.

Instead, debtor appeared at the hearing and represented to the court that Chiu was his relative and he owed him the money. He further represented that Chiu and his other relatives might be willing to amend their claims so that the trustee did not have to liquidate property to satisfy their claims. In other words, they were allegedly willing to simply use up the surplus in the estate, whatever it was.

The bankruptcy court's statements on the record demonstrate that it was concerned with the circumstances surrounding the tardy claims filed by debtor's relatives. The court observed that the trustee was about to make a distribution to postpetition lien creditors and that Li came in with a claim and then "all of a sudden relatives came out of the woodwork at the last minute." Hr'g Tr. (February 26, 2010) at 11:4-5. Ultimately, the court sustained the trustee's objections to Chiu's claim and entered an order disallowing it on March 2, 2010.

On March 8, 2010, Chiu filed a motion for reconsideration, arguing that he had given documents to debtor, who then forwarded them to the trustee, and that the trustee did not request any further documentation. Thus, implicitly Chiu asserted that he met his burden of proof on the presumptive validity of his claim. The trustee responded to Chiu's motion, arguing that he had not demonstrated any grounds for reconsideration; i.e., that there was any manifest error of fact

-5-

or law or newly-discovered evidence.

On March 8, 2010, Yan filed his claim in the sum of $194,000. Attached to the proof of claim were a loan ledger and copies of cancelled checks that totaled $258,290.

On April 6, 2010, the trustee objected to Yan's claim on the grounds that (1) it was late filed despite Yan's knowledge of the bankruptcy case; (2) Yan never objected to the trustee's final accounting; (3) the claim was $156,000 more than the $38,000 listed on debtor's schedules; and (4) the basis of the claim appeared to be the same as that for Yan's wife, Tina Yan, whose claim was previously disallowed.

In response, Yan argued that his claim could not be denied simply because it was late filed. He further asserted that he submitted cancelled checks. Debtor also submitted his sworn declaration which stated that he had borrowed the money from his father. Debtor further explained that he did not list the full amount owed to his father on his schedules because he did not want to create the appearance of questionable large claims from relatives and also did not care whether his relatives' claims were discharged.

In reply, the trustee again asserted that Yan's debt overlapped with the claim of his wife and, if it did not overlap, then debtor's parents together asserted they were owed nearly $600,000 prepetition. The trustee argued that Yan presented no evidence regarding the purpose of the loans nor were there any documents that showed whether debtor paid any of the funds back. Finally, the trustee pointed out that debtor had a duty to make full and accurate disclosures under § 521,

-6-

which he failed to do by not listing the various loans from his relatives in his schedules.

On July 23, 2010, the court held a hearing on Chiu's motion for reconsideration and the trustee's objection to Yan's claim. At the conclusion of the hearing, the court took the matter under submission.

The court disallowed Yan's claim and denied Chiu's motion for reconsideration by order entered November 19, 2010. In its accompanying Memorandum Decision, the court observed that it had discretion to grant an extension of time to permit the late filing of a claim in a chapter 7 surplus case citing <u>Vehaus v. Wilson (In re Wilson)</u>, 96 B.R. 257, 262-63 (9th Cir. BAP 1988). Based on the evidence and record before it, the court declined to grant an extension of time to permit Appellants to file late claims for several reasons.

First, Appellants had adequate notice of the claims bar date,[6] yet Chiu failed to file a claim until two years and nine months after the bar date, and Yan failed to file a claim until three years and one month after the bar date. Second, Appellants had notice of the Final Account, which showed that the trustee would not be making any distributions to either of them. Yet, neither Chiu nor Yan objected to the Final Account. Rather, Chiu waited until eight months and Yan waited more than a year after notice of the Final Account to file their claims.

---

[6] Chiu lived at the same address as Simon and Benita Chiu who were listed on debtors' schedules. Appellants concede on appeal that they had notice of the claims bar date and the Final Account.

-7-

Third, the court found that Yan was an insider and Chiu lived with and shared a joint bank account with someone who debtor identified as an insider. Fourth, the claims were filed only after the postpetition Judgment Creditors obtained writs of execution attaching the estate's surplus. Fifth, the late-filed claims equated to the amount of the surplus, and the net effect of allowing the late-filed claims would be to transfer the surplus to dilatory insiders and to keep those funds from postpetition judgment creditors.

The bankruptcy court also made further findings of fact regarding whether Chiu had met his burden of proving the validity and enforceability of his claim. The court found that Chiu's claim was supported by an unauthenticated check ledger, a canceled check written on the joint account of Thai Ming Chiu and Benita Mui Yan-Chiu in the sum of $15,000, and a declaration by debtor that he borrowed $180,000 from Chiu and did not repay the loan. The court observed that the documentary support did not establish on its face that a loan was made by Chiu to debtor. In that regard, the court noted numerous inconsistencies in the documents provided, which we need not repeat here.

Chiu and Yan timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court abused its discretion in disallowing Appellants' proofs of claim; and

B. Whether the bankruptcy court abused its discretion in denying Chiu's motion for reconsideration.

## IV. STANDARDS OF REVIEW

The proper interpretations of statutes and rules are legal questions that we review de novo. Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 434 (9th Cir. BAP 2005).

We review a bankruptcy court's decision to allow or deny a proof of claim for an abuse of discretion. Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.), 195 B.R. 92, 96 (9th Cir. BAP 1996) ("the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law.") (citing Pepper v. Litton, 308 U.S. 295, 304 (1939)).

A bankruptcy court's denial of a motion for reconsideration of the disallowance of a claim under § 502(j) and Rule 3008 is reviewed for an abuse of discretion. Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath), 331 B.R. 424, 429 (9th Cir. BAP 2005).

We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 n.20. We affirm the court's factual findings unless those

findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>Id.</u> If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in the record, then the bankruptcy court abused its discretion. <u>Id.</u>

We may affirm the bankruptcy court's decision on any ground fairly supported by the record. <u>Wirum v. Warren (In re Warren)</u>, 568 F.3d 1113, 1116 (9th Cir. 2009).

## V. DISCUSSION

The Bankruptcy Code and Rules set forth the requirements for proofs of claim. Section 501(a) provides that a creditor "may file a proof of claim." A proof of claim constitutes "prima facie evidence of the validity and amount of the claim" under Rule 3001(f) and is deemed allowed under § 502(a) unless a party in interest objects. Here, the trustee objected to Appellants' claims. Her objections triggered § 502(b) which provides that after notice and a hearing, a bankruptcy court must analyze and apply the grounds for disallowance enumerated in paragraphs (1) through (9).

Section 502(b)(9) states that late-filed claims are disallowed except when they are covered by § 726(a)(3). Thus, the plain language of § 502(b)(9) sets forth the rule that when there is a surplus estate in a chapter 7 case such as here, late-filed claims cannot be disallowed on the grounds that they were tardily filed. However, § 502(b)(9) does not eviscerate the remaining grounds for disallowance under subsections (1)

-10-

through (8). In addition, § 726(a)(3) does not provide for the payment of all late-filed claims, but merely sets the priority for late-filed claims that are otherwise allowed under § 502(b).

The primary question in this appeal involves the allowance of Appellants' claims, not their priority under § 726(a)(3). In that regard, the bankruptcy court improperly relied on <u>In re Wilson</u>, 96 B.R. 257 which, in turn, relied on Rule 3002(c)(6). Rule 3002(c)(6) previously implemented § 726(a)(3) and was construed in <u>Wilson</u> to give the bankruptcy court discretion whether to extend the time to permit creditors to file late claims. Prior to 1996, Rule 3002(c)(6) provided:

> In a Chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court <u>may</u> grant an extension of time for the filing of claims against the surplus not filed [in a timely manner].

Rule 3002 was amended in 1996 to make clear that late proofs of claim are governed by § 502(b)(9) and not the Rule. <u>See</u> Advisory Committee Note to Rule 3002 (1996). Among other things, subsection (c)(6) was deleted from the Rule at that time. Consequently, decisions like <u>Wilson</u> which apply Rule 3002(c)(6) in its former version no longer reflect the applicable law.

Although Appellants' claims were tardily filed, the outcome of this appeal does not turn on that fact alone because the trustee objected to Appellants' claims on other grounds. "[T]he proper exercise of the bankruptcy court's equitable powers under § 502 is through investigation into the existence, validity and enforceability of claims leading to their allowance or disallowance . . . ." <u>Murgillo v. Cal. State Bd. of Equal.</u>

-11-

(In re Murgillo), 176 B.R. 524, 533 (9th Cir. BAP 1995). For the reasons explained below, we conclude that the record supports the bankruptcy court's disallowance of Appellants' claims on a burden of proof analysis. Therefore, the court's reliance on Wilson and Rule 3002(c)(6) was harmless error. See Rule 9005 ("Harmless Error") (incorporating into bankruptcy rules Civil Rule 61, which provides: "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

A. **Chiu's Claim**

Chiu concedes that the trustee's initial objection to his claim was justified because his proof of claim did not include the supporting documents. Thus, Chiu had the ultimate burden to prove the validity of his claim by a preponderance of the evidence. Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (9th Cir. BAP 1993). Moreover, Chiu's burden was heightened because he was debtor's relative and an insider under the Code. See Pepper, 308 U.S. at 306. As such, Chiu's claim was subject to rigorous scrutiny. Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.) 926 F.2d 1458, 1465 (5th Cir. 1991).

Although Chiu subsequently provided the trustee with cancelled checks purporting to show funds transferred from Chiu to debtor, the bankruptcy court found, and we agree, that those checks did not on their face establish a loan by Chiu to debtor due to inconsistencies or incomplete information on the face of the checks. Moreover, the check ledger submitted in support of his claim was unauthenticated. Finally, the record shows that
-12-

Chiu failed to provide a written response to the trustee's objection and thus did not provide any further detail regarding the loans he allegedly made to debtor. Chiu also did not appear at the hearing. On this record, we conclude that Chiu failed to carry his burden of proving the amount and validity of his claim. Thus, the bankruptcy court did not err by disallowing Chiu's claim.

We are not persuaded by Chiu's argument on reconsideration that he proved up his claim because the trustee did not ask for anything more. Had the trustee truly been satisfied, the trustee would have withdrawn her objection to his claim. Moreover, reconsideration of the disallowance of a claim is based "on the equities of the case." See § 502(j). The equities of this case would not have supported the reversal of the disallowance of Chiu's claim nor does Chiu even argue that point on appeal. Accordingly, the bankruptcy court did not abuse its discretion by denying Chiu's motion for reconsideration of the order disallowing his claim.

**B. Yan's Claim**

Besides the timing aspect of Yan's claim and his insider status, the trustee's objection pointed out numerous other inconsistencies which demonstrated that Yan's claim lacked prima facie validity.

The amount of Yan's claim changed numerous times over the course of this case. Initially, debtor, under penalty of perjury, scheduled Yan's debt in the amount of $38,000. However, Yan, also under penalty of perjury, filed his proof of claim for $194,000. The record does not reflect that debtor

-13-

Case: 04-33526   Doc# 479   Filed: 07/11/11   Entered: 07/15/11 11:42:04   Page 13 of 18

ever amended his Schedule F before the trustee made the distributions set forth in the Final Account, nor did Yan ever amend his proof of claim. Thus, it is impossible to tell which sworn version of the facts is the true version.

Yan's claim was irregular in other respects. Yan attached documents to his proof of claim showing $258,290 in checks to debtor, but stated that he wanted only $194,000. Debtor offers the explanation that Yan reduced his claim so that the trustee would not have to liquidate properties in a distressed market. However, this explanation makes no sense. Legitimate creditors of a bankruptcy estate assert their rights to payment from property of the estate; they are not concerned with further liquidation of properties. If anything, the conflicting numbers in debtor's schedules, in Yan's proof of claim, and in the supporting documentation suggest that the amount of the claim was arrived at arbitrarily to coincide with the amount of the surplus estate.

Finally, the record shows that Yan's proof of claim overlapped to some extent to that of his wife, Tina Yan, whose claim was disallowed. There is no explanation in the record for such an overlap.

In sum, we conclude that the record shows that Yan failed to prove the actual amount of his claim and its validity. Accordingly, we affirm the bankruptcy court's decision to disallow Yan's claim.

**C. Bankruptcy Aspects**

Besides a lack of proof, overriding bankruptcy principles would also support the bankruptcy court's decision to disallow

Case: 04-33526   Doc# 479   Filed: 07/11/11   Entered: 07/15/11 11:42:04   Page 14 of 18

Appellants' claims under the circumstances of this case. In re Murgillo, 176 B.R. at 533. The record supports the bankruptcy court's explicit concern regarding the timing of Appellants' claims; i.e., that they served no valid bankruptcy purpose, but, instead, were strategically filed so that debtor could avoid paying his postpetition Judgment Creditors who had attached the surplus of his estate.

Further, debtor has presented a myriad of changing stories in this case. Full disclosure in the bankruptcy schedules is essential to satisfy a significant purpose: that adequate information be available to the trustee without the need for investigation into whether the information is true. Debtor did not list Chiu's claim in his schedules, which were signed under penalty of perjury. Yet, debtor later declared under penalty of perjury that he owed the money when Chiu filed his tardy claim. Moreover, debtor listed his father's claim as $38,000, but he later admitted that he did not list the full amount of the debt because he did not want to create the appearance of questionable large claims from relatives. Debtor's failure to fully and adequately disclose not only has serious consequences, but his change in position demonstrates an intent to play fast and loose with the court, thereby prejudicing the trustee's administration of his estate. Had debtor listed the claims of his relatives as required, the trustee would have, before the Final Account, liquidated other assets to assure distribution to all creditors. Instead, she was prepared to abandon the assets to debtor.

This later point directly relates to debtor's role in this appeal. His representation of Chiu and Yan as their attorney is

truly troubling to this Panel. Where a debtor is a creditor's attorney, the conflict of interest involved is obvious. How can the debtor, as lawyer, advise his clients fully and effectively when the lawyer himself is on the other side of the bargaining table? Allowing Appellants' claims in full would compel the trustee to liquidate more of the to-be-abandoned estate, an obvious negative result to debtor.[7]

### VI. CONCLUSION

For the reasons stated above, we AFFIRM.

---

[7] We also observe that debtor, acting as Appellants' attorney, potentially jeopardized their claims by filing a brief in this appeal that is not in proper format. Fed. R. App. P. Rule 32(4) requires that the text of the brief be double-spaced. We may dismiss an appeal for violation of the rule. See 8001(a). That we did not do so does not lessen the import of debtor's actions which he took in the role of an attorney.

-16-

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

BAP No.: NC-10-1476-JuHPa

RE:      DEMAS WAI YAN

A separate Judgment was entered in this case on **07/11/2011**.

### BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8014-1

### ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

### APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

## CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

By: Vincent Barbato, Deputy Clerk

**Date:** July 11, 2011